**Opinion filed January 14, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-20-00165-CV

_____

## IN THE INTEREST OF L.W. AND M.W., CHILDREN

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV 18-09-400**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of L.W. and M.W.  Only the mother appealed.  On appeal, she presents five issues in which she challenges the legal and factual sufficiency of the evidence to support the trial court's findings.[1]  We affirm the trial court's order of termination.

---

[1]We note that, as seems to be common practice for him, Brown County Attorney Shane Britton failed to file a brief on behalf of Appellee.  *See Reich v. State*, No. 11-18-00355-CR, 2020 WL 7034631, at *1 (Tex. App.—Eastland Nov. 30, 2020, no pet.) (mem. op., not designated for publication).

## I. *Issues Presented*

In Appellant's first issue, which she refers to as Issue 1(a), Appellant challenges the legal and factual sufficiency of the evidence in support of the trial court's finding that termination of Appellant's parental rights would be in the best interest of L.W. and M.W. In her second, third, and fourth issues, which she refers to as Issues 1(b), 1(c), and 1(d), Appellant challenges the legal and factual sufficiency of the evidence in support of the trial court findings related to Appellant's endangering of the children and Appellant's failure to comply with certain conditions imposed on her. In her fifth issue, which she refers to as Issue 1(e), Appellant challenges the sufficiency of the evidence related to her ability to comply and her good faith effort to comply with the conditions imposed on her.

## II. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found (1) that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, (2) that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, and (3) that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective

Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the children.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination

3

may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### III. *Evidence Presented at Trial*

The record shows that the Department became involved with Appellant in 2018, when L.W. was six years old and M.W. was five years old. Authorities were summoned to Appellant's residence due to incidents of domestic violence between Appellant and her husband, who is the children's father. Although the initial intake related to domestic violence, the parents' drug use quickly became a secondary reason for the Department's continued involvement with the family. Both parents tested positive for methamphetamine, and Appellant also tested positive for marihuana. Appellant admitted that she and her husband used methamphetamine together.

After the children were removed, Appellant and the Department participated in the creation of a family service plan. The trial court made the family service plan an order of the court. Appellant, however, did not comply with the provisions of her service plan. She continued to test positive for drugs and eventually quit submitting to the drug tests that were requested by the Department. The record indicates that Appellant tested positive for methamphetamine in September 2018, February 2019, and May 2019; that she tested positive for marihuana in September 2018, October 2018, November 2018, December 2018, January 2019, and March 2019; and that she no-showed once in February 2019, could not be located in April or early May 2019, and refused to submit to drug tests as requested from June 2019 through December 2019. Because of her continued drug use, Appellant was not permitted to have visitation with the children. In addition to the drug-related issues, Appellant failed to complete counseling, failed to keep the Department apprised of her address and the people with whom she lived, and failed to complete classes required by her service plan.

Both children had issues—psychological, social, and educational—that could be attributed to the conduct of the parents. The children lied regularly, exhibited physically assaultive behaviors, were not easily redirected, and made age-inappropriate comments about looking "sexy." The children had witnessed their parents engaging in sexual acts. Both children had mood disorders, had ADHD, were dyslexic, and were behind in school. While in foster care, L.W. was diagnosed with oppositional defiant disorder, and M.W. sometimes "self-harm[ed]" when she got upset at school. By the time of the final hearing on termination, both children's behavioral issues had improved dramatically, especially M.W.'s; however, some of their behavioral issues persisted.

The record shows that, upon removal, the children were initially placed with a relative. Soon thereafter, when that relative was no longer able to care for the children, they were placed in an experienced, therapeutic foster home. The children remained in that home at the time of trial. The foster mother testified about the children's behavioral issues and the strides that both children had made during the approximately twenty-one months that the children had been living with the foster parents. Nevertheless, despite the children's behavioral improvements, the children would continue to need "a lot of really dedicated one-on-one time." Although the foster parents with whom the children had been placed were committed to helping the children transition to a forever home, they were not an option for permanent placement or adoption of the children.

The attorney/guardian ad litem for the children informed the trial court that the children wished to be returned to their parents. The attorney/guardian ad litem also indicated that he believed that it would be traumatic to the children for the parents' parental rights to be terminated and that, "if they can't be placed back with the parents, then the second choice I believe is -- the best interest of the children is to be placed with [the maternal grandmother]." The record indicates, however, that

5

placement with the maternal grandmother was not an option for the Department because she failed the home study; had felony criminal history, including a conviction for possession of methamphetamine in 2007; had "CPS" history; and tested positive for methamphetamine in one test that was administered by the Department.[2]

The children's foster mother and the conservatorship worker did not agree with the recommendation of the children's attorney/guardian ad litem, who, according to the foster mother, had only visited with the children twice during the time that the children had been in foster care. Furthermore, the maternal grandmother, her husband, and the paternal great-aunt, all of whom wanted the children to remain with family, had indicated that the children would be in danger if returned to Appellant and the children's father. The maternal grandmother had previously stated that she did not believe that Appellant or the children's father would change their behaviors and that termination of the parents' parental rights would be in the children's best interest.

## IV. *Analysis*

In her second, third, and fourth issues, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (D), (E), and (O). We need only address her challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

---

[2]Appellant asserts that another child, who had been placed with the maternal grandmother under a CPS "safety plan," was permitted to remain in her care despite the allegedly positive drug test. We note that that child was not Appellant's child and was not in any way involved in the proceedings at issue in this appeal.

6

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct need not be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.* A parent's drug addiction and its effect on the parent's life and ability to parent a child may establish an endangering course of conduct. *In re J.T.G.*, 121 S.W.3d 117, 125–26 (Tex. App.—Fort Worth 2003, no pet.) (citing *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ)). Further, domestic violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

Here, based upon evidence of domestic violence between Appellant and the children's father while the children were in their care, Appellant's use of methamphetamine and marihuana while the children were in her care, Appellant's continued use of drugs after removal, and Appellant's apparent exposure of the children to sexual acts between the parents, the trial court could have reasonably found by clear and convincing evidence that Appellant had engaged in a course of conduct that endangered her children. Therefore, we hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's third issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not address Appellant's second and

fourth issues. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1. Furthermore, we need not address Appellant's fifth issue because it is dependent upon the fourth issue. *See* FAM. § 161.001(b)(1)(O), (d); *see also* TEX. R. APP. P. 47.1.

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the best interest of L.W. and M.W. Before the children were removed, Appellant and the children's father engaged in domestic violence and used methamphetamine together. Appellant continued to use drugs after her children were removed from her care, and she failed to complete the services that were required for the children to be returned to Appellant.

The children had been placed in a therapeutic foster home where all of their needs were being met. The record shows that the Department had not searched for prospective adoptive parents other than relatives but that it would begin that search after the termination hearing. The children had been in foster care for twenty-one months, during which time they had not seen Appellant because she did not provide three consecutive clean drug tests. Appellant wanted the children to be placed with Appellant's mother; however, neither Appellant's mother nor various other relatives were viable options as placement for the children. The Department's goal for the children at the time of trial was for the parents' parental rights to be terminated and for the children to be adopted.

Based on the evidence presented in this case, we defer to the trial court's finding as to the children's best interest. *See C.H.*, 89 S.W.3d at 27. We hold that, in light of the evidence presented at trial and applying the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in L.W.'s and M.W.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the

children (who loved their parents and wished to live with them), the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, Appellant's continued use of methamphetamine, and the instability of Appellant's situation, we further hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of L.W. and M.W. *See id.* Irrespective of Appellant's assertion, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. Accordingly, we overrule Appellant's first issue.

V. <em>This Court's Ruling</em>

We affirm the order of the trial court.

W. STACY TROTTER

JUSTICE

January 14, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[3]

Williams, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.